Case 3:11-cv-01894-B   Document 46   Filed 04/04/12   Page 1 of 10   PageID 320

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **DIANE IRONS and BEN IRONS,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:11-CV-1894-B(BF) |
| ) | |
| **CITY OF DALLAS and LATASHA** ) | |
| **MOORE,** ) | |
| Defendants. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred the City of Dallas' (the "City's") Second Motion to Dismiss Federal Claims Pursuant to 12(b)(6) ("Motion," doc. 41) to the United States Magistrate Judge for recommendation. No response was filed, and the time to file a response has expired. After considering the Motion and the applicable law with respect to Plaintiffs' claims against the City, the Court recommends that the City's Motion be **GRANTED**.

**Background**

Diane Irons and her son, Ben Irons ("Plaintiffs") filed suit against the City and a Dallas police officer, claiming the City is liable under 42 U.S.C. § 1983 because the City had an unwritten custom, policy, or practice of not enforcing its own policies and not training its police officers to prevent the arrest for public intoxication of a citizen who is not intoxicated but rather, who is suffering from a disabling medical condition. (Am. Comp. at 4-5.)[1] Plaintiffs seek compensatory and exemplary damages.

---

[1] The City filed a Motion to Dismiss Plaintiffs' Federal Claims on November 17, 2011, but Plaintiffs filed a Motion for Leave to Amend Complaint which the District Court granted on January 19, 2012. The District Court denied the City's Motion to Dismiss without prejudice, and the City filed its Second Motion to Dismisss after Plaintiffs filed their Amended Complaint.

**Standard of Review**

In determining whether dismissal should be granted under Rule 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). To defeat the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citation and footnote omitted). However, legal conclusions need not be accepted as true. *Ashcroft v. Iqbal*, — U.S.—, 129 S.Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 544). A court may dismiss a claim that fails to meet the pleading requirements, but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of County Comm's of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity cannot be liable for civil rights violations under a theory of respondeat superior

or vicarious liability. *Monell*, 436 U.S. at 694; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir.1979). In other words, if a constitutional deprivation has occurred, a plaintiff must still prove that the constitutional deprivation was brought about (1) by a final policymaker; (2) through an official policy, which; (3) was the "moving force" behind the constitutional deprivation. *See Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (discussing elements of municipal liability under *Monell* and later decisions). These requirements of culpability and causation must be rigorously adhered to in order to prevent municipal liability under Section 1983 from collapsing into *respondeat superior* liability. *See Bd. of Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 415 (1997)("As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights")(emphasis in original).

Thus, in order to state a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must ***plead specific facts*** which identify the policy, properly connect the policy to the governmental entity itself – including identifying the final policymaker, and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984), *cert. denied*, 472 U.S. 1016 (1985); *see also Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997)("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."). A plaintiff must allege facts that tend to establish that the governmental entity through its deliberate conduct was the moving force behind the injury or harm suffered and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County*, 520 U.S. at 403-04. In order to give a municipal defendant fair notice of the basis of section

3

1983 claim, the Fifth Circuit requires a plaintiff "plead *facts which show* that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996)(citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987)(emphasis supplied).

## Background

Plaintiffs' allegations against Officer Moore are helpful in understanding their allegations against the City. Plaintiffs, Dianne Irons and Ben Irons ("Plaintiffs") filed this suit on August 3, 2011, seeking monetary relief against the City and Dallas Police Officer Latasha Moore under 42 U.S.C. §§ 1983 and 1988 for the use of excessive force during an unlawful detention and seizure of Plaintiffs at Ms. Iron's home. Plaintiffs contend the arrest and detention violated their fourth amendment rights and the common laws of the State of Texas under the Texas Tort Claims Act. Following are Plaintiffs' allegations against Officer Moore:

Ms. Irons alleges that she had suffered a stroke that impaired her speech and as a result she slurred her words and had trouble walking. She claims that on February 23, 2011, the Dallas Police Department was called when her nephew came to her house and a dispute arose over ownership of her home. One of the Dallas Police Officers who came was Moore. The officers spoke with Ms. Irons, and then Moore asked Ms. Irons to step out onto her porch. Ms. Irons complied, and without provocation or warning, Moore arrested Ms. Irons for public intoxication. Ms. Irons told Moore that she did not drink and that her speech was the result of her stroke. Moore told Ms. Irons that she appeared to "have been drinking or maybe under the influence" of drugs.

Ms. Irons telephoned her son, Ben Irons, and he told Moore that his mother had suffered a stroke and her speech was slurred because of the stroke. He stated that he had the medical evidence to prove that he was telling the truth. Moore agreed to wait for him, and when he arrived, he pleaded with the officers to not take his mother to jail and tried to explain to the officers that his mother was a stroke victim and was not inebriated. The officers refused to listen and threatened Ben Irons with arrest if he did not sit down and be quiet. When Ben Irons continued to try to show Moore his mother's medical records that show she goes to speech therapy, without provocation, Moore arrested Ben Irons.

Ben Irons was handcuffed in front of all the neighbors who were watching and placed in the police car under arrest. Ben Irons told his wife and children to leave while he was being arrested and Moore told Ben Irons that she was going to keep him right there in front of everyone in the neighborhood until his wife returned. She told him that when she did, Moore might arrest her too. Ben Irons' wife never returned, and Moore kept Ben Irons handcuffed in the back of the police car for more than 2 hours before she finally released him.

After Moore had detained Ms. Irons for more than two hours, Moore took Ms. Irons to a detoxification center and kept her there for more than six hours. Moore issued Ms. Irons a ticket (with a fine of about $394.00) because Moore said Ms. Irons had "bloodshot eyes, slurred speech, and breath smelling of an alcoholic beverage."

## Analysis

The Court begins its analysis of Plaintiffs' claims against the City, as the *Iqbal* court did, by identifying the allegations in the complaint that are conclusory and therefore not entitled to the assumption of truth. *See Iqbal*, 129 S.Ct. at 1949. Plaintiffs' conclusory allegations follow:

5

[T]he City of Dallas Police Department has had an ongoing problem with arresting sober persons who were not drunk. In February of 2010, the department began requiring officers to write more detailed reports about why someone is a danger to themselves or others when intoxicated. However, as an unwritten custom, policy, or practice those policies are not being enforced and/or the officers have not been properly trained on how to prevent from unlawfully seizing a non-intoxicated person for allegedly public intoxicated [sic].

The actions of Officer Moore were the result of policies, customs, and practices of the City of Dallas Police Department and that through such policies, customs, and practices the Defendant City of Dallas violated each and every Plaintiff's Fourth Amendment Rights.

These policies, practices, and customs include the failure of the City of Dallas to adequately train and supervise its officers in the arrest of a person, including the use of force to seize and ascertain whether a person is intoxicated, all of which were a proximate cause of each and every Plaintiff's injuries and damages. Officer Latasha Moore was not trained on how to ascertain whether a person with slurred speech and abnormal gait is in fact intoxicated and a danger to herself and the public at large rather than a person with a disabling medical condition. As a result, Dianne Irons and Ben Irons were wrongfully arrested and detained by Officer Latasha Moore. Prior to the wrongful arrest of Dianne Irons, the City of Dallas's law enforcement officers engaged in numerous acts of wrongful arrest similar to the circumstances of this case, in violation of standard law enforcement rules and citizens' civil rights. The police chief and others delegated by the City of Dallas with responsibility for operating the police department were aware of these occurrences which were of a sufficient frequency to alert the City of Dallas's Police Department of the need for additional training and supervision. The City of Dallas's Police Department failed to provide such

training and supervision knowingly and with deliberate indifference to the constitutional rights of each and every Plaintiff. Such failure was a moving force in the wrongful arrest and detention of each and every Plaintiff and the violation of their Fourth Amendment rights.

(Am. Compl. at 4-5.)

Plaintiffs fail to plead facts which show the identity of the City's final policymaker who makes, adopts, or ratifies the practices, customs, policies, and procedures, and they fail to plead facts which show what the policy or custom was, that it existed, that the governmental policy makers actually or constructively knew of its existence, or that the custom or policy served as the moving force behind a constitutional violation. Plaintiffs allege no facts to show the final policymaker knew of, or had constructive knowledge of, even a single instance of wrongful arrest for public intoxication that occurred before Plaintiff's arrest. They allege only the conclusions that the wrongful arrest of disabled persons for public intoxication by Dallas police officers is so common and well known to the unnamed final policymaker that it constitutes a custom that fairly represents official policy. Plaintiffs' conclusions, unsupported by facts, are not entitled to the presumption of truth.

Plaintiffs' other allegations concern negligent supervision and training of Officer Moore by the City. Plaintiffs make the conclusory allegation that the City did not properly screen, evaluate, investigate, or take any reasonable steps to determine whether Latasha Moore was unfit or incompetent to be a police officer. They allege that the City knew or should have known that Officer Moore was unfit and untrained although they state no underlying facts to show how the City knew or should have known. Plaintiffs allege the City could foresee that Latasha Moore would come in contact with Plaintiffs, creating a risk of danger to Plaintiffs, but they allege no facts with

7

respect to how the City could foresee the events of which they complain. Plaintiffs concluded that the City is liable for the damages they suffered.

Plaintiffs allege "upon information and belief" that Defendants and their supervisors have in the past falsely arrested individuals without probable cause and made and allowed other fellow police officers to make false entries in official police department records to cover up and hide their wrongful conduct. Plaintiffs' allegations based "upon information and belief" are not sufficient because Plaintiffs are required to allege facts, not suppositions. Plaintiffs make a number of other conclusory allegations about the reports in this case "upon information and belief." Plaintiffs again allege that the City has failed to take steps necessary to discipline, train, supervise or otherwise correct the improper, illegal conduct of Latasha Moore in this case, and other Dallas Police officers in similar cases, involving misconduct and that Plaintiffs have been damages as a result of the wrongful, negligent, and illegal acts of the City. Without any facts to support these allegations, they are no more than conclusory allegations that the City ratified Officer Moore's wrongful arrest by generally failing either to train or supervise its officers. Again, Plaintiffs make complaints against the City's policies but fails to name the final policymaker or state any facts which would allow the Court to make that determination. These bare assertions amount to nothing more than a "formulaic recitation of the elements" of a municipal liability claim. *Twombly*, 550 U.S. at 554-555. As such, the allegations are conclusory and not entitled to the assumption of truth. *Id*.

## Conclusions

Plaintiff has not pled any facts which, taken as true, show similar incidents of wrongful arrest. No facts reveal the identity of the City's final policymaker nor show that the policymaker knew of, or approved, a pattern or practice of wrongful arrest, much less ratified its use. Similarly,

8

no facts show that the City failed to make background checks of officers before they were hired or that its final policymaker failed to provide officers training in proper arrests, or failed to discipline officers who wrongfully arrested citizens. Further, no facts show that officers changed reports or that the City's final policy maker ratified instances of officers' changing reports. No facts show a direct causal link between any City policy or custom and Plaintiffs' alleged damages. In sum, Plaintiffs cite no facts which plausibly suggest an entitlement to relief against the City. Additionally, Plaintiffs have had the opportunity to state their best case against the City. Accordingly, the Court should not grant Plaintiffs leave to file a Fourth Amended Complaint.

## Recommendation

The Court recommends that the District Court grant the City's Motion (doc. 41) and dismiss with prejudice Plaintiffs' claims against the City.

**IT IS SO RECOMMENDED**, April 4, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Servic* Willie E.  Hardeman's Motion to Appeal (doc.  407) and Motion for Summary Judgment (doc.  441). *es Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).